Good morning, Your Honors. My name is Ina Lipkin, representing the petitioner in these immigration proceedings. Petitioner argues that the immigration judge, hereafter I'll call it the IJ, and the board erred in upholding this completely erroneous adverse credibility finding. The crux of the issue here, one issue really, should the petitioner be penalized for failing to mention the rape that occurred to her in Armenia during her airport and credible fear interviews, which occurred while she was in custody. She did mention this event and a few other incidents of harm in her written declaration and her asylum application. Thereafter, she testified to those events in open court, both at the initial hearing in 2006 and after the board remanded this case in 2007 or 2008. At all times, she was consistent both internally and with her written documentation regarding the incident of rape. It's fair to say that the problem she faces is not just that she didn't mention it initially. It's that she can offer nothing by way of corroboration. That seemed to be a focus of the IJ in his decision. That was another incidental issue. The fact is, though, Your Honor, because she did testify credibly, because she did corroborate plausible explanation for the omission, as this is a pre-Real ID Act case under LADA v. INS, she is not required to corroborate that. What are we to do with the worksheet indicating that no one was present at the credible fear interview other than herself and the asylum officer? Because the IJ specifically talked about, in terms of inconsistency, the fact that her proffered explanation, that she didn't want to talk about the sexual assault in front of her 5-year-old, is not credible because the indications are that the daughter was not present. What are we to do with that? But, Your Honor, the record clearly reflects, she never said, my child was sitting here and I don't want her to hear it. She said, I don't want her to find out. She says, specifically, she says, I didn't want my child to hear about it, was her exact wording. Right. But, of course, these proceedings are being translated by a court interpreter from Armenian into English. Right. That is the transcript. It says, I didn't want my child to hear about it. Right. Which is different than, I didn't want my child to hear it. Exactly. It's not clear that she meant that she was in the room. And the one thing I really want to stress, which we talked about in the briefs, this was not some sort of lengthy, detailed proceeding in front of the asylum officer. The record clearly reflects, the asylum officer wrote a two-paragraph summary of the discussion the officer had with the petitioner. She testified it lasted no more than 10 minutes. Therefore, the government has failed to prove that she was specifically asked or given an opportunity to flesh out and elaborate all the details of harm that occurred to her. Well, she didn't have to be asked. I don't think there's any case or rule that says that when you're asked open-ended questions, which is normally the case, what's your story, what happened to you, that you have to be asked a list of, you know, were you beaten, were you raped, were you this? Sure. And that wouldn't even really be feasible. However, a judge has to take into consideration that the applicant is under custody at the time, unrepresented, fresh from traveling here. That's another point I want to make, that both the IJ and the board made a sort of confounded and unreasonable emphasis on the fact that an entire five days had passed from the moment she stepped off the plane to the moment she had this credible peer interview. But they're neglecting to factor in that she was under that sort of pressure. She was under – in detention along with her 5-year-old daughter. Totally understood. Let's go beyond it. Let's give her the benefit of that doubt. She's off the plane. Life is upside down. She's got this young child. Give her the benefit of that doubt. Now we go down the road. She files her application. She includes the rape. Whether she has an obligation pre a real ID or not, what we're asked to study is the reasonableness of the IJ's determination in light of the lack of corroboration of her credibility on that score. Now, how do we – what is it about that that we should find not only unreasonable, but compel us to reach a different conclusion? Well, Your Honor, the court should look at the record and take into account her reasonable explanation for lack of documentation. Her reasonable explanation that she was not in the best of relations with her husband and that he refused to cooperate, that he was under some sort of mental stress, abandoned in the Ukraine with no legal residency, and his wife and daughter in the United States, and he didn't cooperate to write her a letter. Now, this Court has found, Your Honor – Is there any evidence in the record, by the way, that the husband or the mother, or for that matter anyone else, was ever told specifically about the rape? Yes. Because the record reflects that the Petitioner had informed her parents who were in the U.S. that – I don't – I don't read the record that way. Nor do I. She is asked by the government's lawyer, so on February 23rd, 2004, you called them and told them that you'd been raped and you were coming to the United States. Answer, no. April 23rd is when I told them I'm coming to America. So she never actually says she told them about the rape at any time. The only place that appears is in a compound question from the government's lawyer, but she – I don't see any other testimony, unless I'm missing something, that says that she ever told her parents she was raped. You may very well be right, Your Honor. On the other hand, as I mentioned in the brief, she did make her parents available as witnesses on a witness list submitted to the courts. Right. But that's – you know, if they had – if we have no way to tell from this record whether they had any knowledge, it's – it doesn't really matter whether they testified or they didn't. And I think that the main concern that the IJ had was the lack of testimony or letter of corroboration from the husband. And again, under, say, Cosa v. Mukasey, the Court has found that if an applicant presents credible testimony and gives a sufficient explanation for the unavailability of other corroborating documentation, as Petitioner had, that's sufficient to find her testimony truthful. Do you want to save some rebuttal time? Yes, Your Honor. I do. Thank you. Good morning. May it please the Court. Dan Goldman on behalf of the Attorney General. The government asks this Court to uphold the agency decision and deny the petition for review. Counsel for Ms. Eslanian is correct in so far as this case really does boil down    One omission. One omission. One omission. One omission. It is a very serious omission, and that's why the adverse credibility finding is who's justifying this case. I'm sorry. Go ahead. No, please. We have a number of cases pre-Real ID Act, which this case is, that specifically deal with the omission to discuss a sexual assault or rape. And they seem to suggest to us that an omission, as distinct from an affirmative change of story where you say, no, I was never raped, yes, I was, but a mere omission is not generally sufficient in this circuit, pre-Real ID, to uphold the adverse credibility finding in this context. What is your response to what our cases say in that regard? I think it's a multi-tiered response. It is. A multi-tiered question, too. So I'll do my best to get through as many of those tiers as we can. I think in looking at the case law, what the case law seems to suggest is that an omission can be, for lack of a better term, forgiven, but it depends largely on the reasonableness of that explanation. In some of those cases, particularly dealing with alleged sexual assaults, some of the explanations were, for example, I didn't feel comfortable speaking to a male asylum officer, but once I was speaking in an immigration court, the immigration judge was female, the female victim felt more comfortable discussing it. So what is in – what is sort of materially different about saying I didn't want my 5-year-old daughter to find out about it or to hear about it? There's a couple things there, Your Honor. First, as was discussed a little bit earlier, it's arguably not clear exactly what was meant by that, whether it was, I didn't want her to hear it because she was in the room where the paperwork clearly says Mrs. Lanyon and the officer. She never says her daughter was in the room. She never so testified. Yes. So there's no contradiction there. To the extent that she's going to say I didn't want my daughter to hear about it, the problem with that is that she has an obligation to raise a claim. And to say I didn't want my daughter to hear about it – But we're looking at the reasonableness of the explanation. So it's, I think, pretty indisputable that a sexual assault victim would be reluctant to disclose the assault. And so going further to say, well, you didn't disclose it because I didn't want my daughter to find out about it seems eminently reasonable, doesn't it? In a sense, yes. The problem with that, Your Honor, I think where that logic ultimately fails is that she did disclose it. So if she didn't want her daughter to hear about it, then presumably she would never mention it. But she has no qualms about mentioning it in her asylum application when she testifies the first time around before the immigration judge, when she testifies the second time. So if you're going to say I didn't want my daughter to find out about this allegedly horrible event, then don't mention it. The problem also gets to when she's asked for this explanation, she does give the explanation that we're talking about. She gave a very different explanation the first time around. So it's not simply that there are problems with the second explanation she gave. It's that there's a problem with the first explanation she gave, and she gave two different explanations. That said, to get back to the original question here. Well, the first time that she was asked about why she didn't disclose it, she said if I recall correctly that she wasn't asked about it. Yes, Your Honor. So she was interviewed days after her arrival. Yes. And she failed to disclose the sexual assault, but she did mention a couple of other incidents, and there was no follow-up to that. Right? Is that what you're talking about? Yes, Your Honor. When you refer to inconsistent explanation? Right. When she's asked in her first immigration court proceedings why didn't you mention this rape, she says they didn't ask or I wasn't asked such a question. The problem with that is that she's asked a very open-ended question in the credible fear interview. It is not a situation where the asylum officer says were you hit, were you slapped, were you punched. It is were you mistreated. And she is responsive to that and responds specifically saying there were – she was persecuted, her husband was beaten, there were attacks. Second, the government would respond. Is there any follow-up to that? She also mentions there were two, depending upon what portion you credit, there were two, or she said there were two or three attacks. No follow-up to that. We don't have a verbatim transcript of the interview. There's nothing in the interview or the notes of the interview that suggests that comment was followed up by the officer, the agent conducting the interview. I think that's a fair statement, Your Honor. The problem with that is I would suggest that rape is different. In asylum claims where there are claims of physical – Do you think the word attack can cover rape? When she says there were attacks? I don't. In this case, Your Honor, and here's why, she concedes that she did not mention being raped. No, of course she didn't in so many words. But if she says we were attacked, that's not inconsistent. It's an omission, but it's not an inconsistency. There's two responses to that, Your Honor. First, she didn't make that argument herself. She did not say in either time around with the immigration court, I said I was attacked. That included – exactly, Your Honor's question. I said I was attacked. That included the rape. The second thing there is I think rape, again, is different. When you have a claim of a physical attack, different individuals might describe it differently. One person might say beaten. One might say attacked. One might say punched or hit. You say rape. That is – respectfully, the government believes that's qualitatively different than saying attacked. Counsel, you rely in your comments on two things. You say, well, she explained that she didn't want her daughter to find out, and also that's not the same explanation she gave earlier. But I'm looking at the immigration judge's decision, and it appeared to me, and I may be wrong about this, so I want to ask you this specifically. It appeared to me that the immigration judge relied on only one thing, and that was the fact that she said she didn't want to mention the rape, as the I.J. says, in the presence of her daughter, which is an inaccurate statement of the record, in my view, but does not seem to rely on what you're describing as kind of a shifting explanation. So if the I.J. relied on only one thing, isn't that the thing that we have to review? Yes, Your Honor. Under Chenery, and I want to make clear, we're not making that affirmative argument, but we are looking at the record as a whole and responding in a sense to the arguments that have been made. The only other thing that I would note there is the immigration judge does indicate on page 77 of the record, the Court notes Mrs. Lining's explanation or explanations, so he does refer to plural explanations, and then in the next sentence, again, uses the explanations are. But then the actual explanation is she stated that she did not want to mention the rape event in the presence of her daughter, who at the time was approximately 5 years of age, and then he goes on to say the daughter wasn't there. But if that is an inaccurate statement of what the record says, then how can it be supported by substantial evidence, because her testimony was not that she didn't want to do it in the presence of her daughter. She said she didn't want her daughter to find out, which is completely different. So how can we say there's substantial evidence here? The answer, I think, Your Honor, is we're having discussions here about what she meant when she said, and I believe, I don't want to miss, to paraphrase it wrong again, I think she says, I didn't want my daughter to hear it, or I would defer to the Court. Hear about it. That's different. Absolutely, Your Honor. The fact that we've had so many different we've had discussions here today as to what not just what she said, and we've paraphrased it, I didn't want her to hear it, hear I don't understand that, because this was in response to a clarifying question from the immigration judge, because she first said, I didn't disclose the rape because my daughter was with me, which is a little bit general. So then the I.J. says, you said you didn't mention to the asylum officer because your daughter was with you. But what does that mean exactly? And she answered, I didn't want my child to hear about it. Yes. Okay? So she's never claiming in her testimony that the child was actually present in the room during the interview, and yet that's what the I.J. relies upon to say she's not credible. So I just have trouble putting those two things together. I see my time has expired. Please, yes, please. Thank you, Your Honor. First of all, I think Your Honor's correct. Obviously, what she says there on the record, the primary basis for the adverse credibility finding starts here with the omission. Then the immigration judge gets to the question of, is there a reasonable explanation for the failure to mention the rape? So I think I wouldn't want to put essentially the cart before the horse and make this all about the explanation. The big thing here is the omission. Then under this Court's case laws, as we've discussed, the question is, is there a reasonable persuasive explanation for the failure to mention something? That's when the explanation comes up. Related to that, Your Honor, I did want to mention the immigration judge also discussed very briefly whether this was something that even would be understood by a young girl. And I want to state for the record that the government is not relying on that statement in any way. In our defense of this case, because I think that gets into the sort of unacceptable speculation that this Court has noted in other cases. So the government's defense of this case is based on primarily the omission, which no one contests. And then is there a reasonable explanation? And as was discussed earlier, is there corroboration? And when you have in this case, first a question as to whether the husband could offer some corroboration. But second, and perhaps even more strongly, the mother. There is evidence in the record that the parents were called. It is, as Your Honor noted, not 100 percent clear as to whether they were specifically told contemporaneously about the rape. But. But there's no evidence at all that they were ever told about the rape. The only mention of the parents being told is in the government's question, to which she answers no. Right, Your Honor. So is there anything else in the record that shows that her parents had any knowledge would be hearsay anyway, but that she, you know, told them about it? No, Your Honor. The specific, I think in, if I'm recalling correctly, the language from Petitioner's brief says there's nothing in the record to suggest that the parents know. We would disagree with that. When you have a phone call made from Armenia to somewhere in the San Francisco area saying, I'm coming to the U.S., and according to Ms. Aslanian, it takes place on the day of the rape, if I'm recalling this correctly, and discusses as well the situation, for lack of a better term, that she is facing in Armenia, it's not unreasonable to believe that she may know. That's also speculative. It is, Your Honor. Completely speculative, isn't it? And it is speculation as to the limited question of did Ms. Aslanian, on February 23, 2004, mention that she was raped. But there is evidence that says, if I'm recalling the dates correctly, that's the date of the alleged rape. There's no affirmative evidence of disclosure of the rape to her parents. You're drawing an inference because you're saying that because the phone call occurred on the same day, she must have talked about it. But then that gets back to sexual assault victims and their reluctance to disclose that. I don't find anything unusual about her reluctance to disclose that. The one word that I would take issue with in what you just said was she must have said it. The government does not say she must have said it. Our position is that it was reasonable. But second, it gets to a question of corroboration. But corroboration has to be reasonably available. And if she didn't tell her parents, they would have nothing to add to this. And there's purely, as I see it, anyway, only speculation that she told them. She never – she answers that question no when she's asked if she told them that she's coming to America and that she was raped. And she said, no, I told them I was coming to America, which, to me, the inference for that is I only told them half the story. I said I'm out of here, but I didn't tell them why. I understand that. Your Honor, there's two quick points. I know that we're past my time. The opportunity was there for her to put her mother on the stand. It was stated earlier that she was on – the mother was on a witness list. She was available. What the records shows is that the mother was available to testify or was available in the immigration courthouse in the first immigration proceedings. I don't believe there's evidence indicating she was there the second day. So what? If she didn't know anything, it doesn't matter. And so we're only guessing that she might have known something. I understand that, Your Honor, but she could – the question – we're talking about what specifically she could have known or said. The government's point is simply that the mother could have testified. It appears from the record that she was told not specifically – even if you want to say not specifically about the rape, about what was going on in Armenia to this family. She could have testified to that. That would have offered some corroboration to the claim. But that wasn't at issue. I don't think anybody's even suggesting that that didn't happen. I understand that, Your Honor. I understand that, Your Honor. The second point, and I would – if I need to submit a 20HA letter, this Court's recent decision from late December talking about falsus ad uno, falsus ad omnibus, where one inconsistency can be the basis for, in a pre-Real ID Act case, an adverse credibility finding. But you yourself said there is no inconsistency. This is an omission case. There's no inconsistency. We're using that – we're using that term in the – in asking the Court to apply the recent case, Enyi and Lee, to apply it because of the omission and using that in the same sense as an inconsistency. And does that apply when the initial officer at the credible fear and the airport interviews apparently credited her testimony concerning all the other attacks? In a way, although we focus on the rapist, I think we have to, the rapist is almost immaterial. She was attacked. They were attacked. Her husband was hospitalized. All of that appeared to have been credited by a fact finder, albeit preliminarily. So falsus ad uno, okay, but when you have a body of information that appears to have been credited by the officer, you need at least an explanation as to why this other incident, in effect, trumps her credibility with respect to the other incidents that would otherwise justify asylum. In this case, Your Honor, I think, again, when you suggest rape, that is, number one, that's qualitatively different. It was a basis for her claim. She has made that assertion that her claim was based on, in addition to the other attacks, the rape. The second part of that is that what the Court said in Enyi and Lee was you can have a completely credible claim. There were two claims in that case. One was religion, if memory serves. One was religion. One was a forced abortion claim. One of those claims was completely credible. One of them had credibility problems, and the Court found that the credibility problems with the one claim did wash over, in a sense, into the otherwise credible claim. So the fact that, as Your Honor noted, there were no issues as to these other attacks, the doctrine, falsus ad uno, would still apply in this case. Subject to the Court's questions. Thank you. Thank you, Your Honor. We certainly kept you beyond your expected time, and we appreciate your answers. Thank you. Thank you, Your Honor. Ms. Lincoln, you have some rebuttal time remaining. Your Honor, it's just a couple of things that counsel had brought up, and I just want to clarify. There was a line of reasoning that he took that we object to, and that is, if the petitioner was truly fearful or unwilling for her daughter to learn of the rape, then she should never have mentioned it at all, even in proceedings. But that's really unjustified. When a petitioner hires counsel and is then instructed about the requirements of the law to fully state a claim, it's just unreasonable to penalize her for then finally revealing the very thing that she had feared to discuss. And, again, I just want to close by reminding the Court, and I know the Court knows, the case of Paramasami, where this Court, quote, rejected the assumption that the timing of a victim's disclosure of sexual assault is a bellwether of truth, end of quote. And really, that's the crux of this case. Thank you. Thank you, counsel. We very much appreciate the arguments of both counsel. They've been very helpful in this interesting and difficult case. The case is submitted, and we are adjourned for this morning's session.
judges: Dearie, Graber, Nguyen